UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN SPAHN, <br><br> Plaintiff, <br><br> v. <br><br> KIRK SPAHN, <br><br> Defendant. | Case No.: 1:24-cv-04035-ER <br><br> **DECLARATION OF KIRK SPAHN IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT** |

I, Kirk Spahn, do hereby declare and state as follows:

1. I am the Defendant in this action. I have personal knowledge of the facts set forth in this declaration, which I respectfully submit in opposition to the motion for summary judgment in lieu of complaint filed by Stephen Spahn, the Plaintiff in this action.

2. Stephen Spahn is my father. Stephen Spahn is the Chancellor of the Dwight School, a private preparatory school in New York City. He has worked at The Dwight School for over 50 years. Stephen Spahn is married to my mother, Constance Spahn.

3. I understand that, in this action, my father has sued me in order to collect on an alleged promissory note dated September 28, 2017 (the "Note"). The Note was purportedly for the amount of $1,000,000.

4. Throughout my adult life, my parents have provided me with various monetary gifts. Given my close, loving relationship with my parents, my parents gifted me these monies without any expectation that they would be repaid. When large monetary gifts were made, my parents would expressly tell me that the money would not need to be repaid. In such instances,

1

my family followed a customary practice, on the advice of our family attorney, of preparing sham "promissory notes" for the express purpose of avoiding applicable gift taxes. As discussed below, the Note at issue followed my family's customary practice.

5. As set forth below, for most of my adult life, my father and I were represented by the same attorney, Michael Kalnick of the law firm Kalnick Klee & Green, LLP. I have always considered Mr. Kalnick to be the "Spahn family attorney," representing my parents and myself. I relied on Mr. Kalnick's advice and counsel in all of my legal financial affairs for the majority of my adult life, including specifically in connection with the execution of the Note at issue.

6. My family has owned and operated the Dwight School for decades. I have always considered the Dwight School part of my family's legacy and felt a personal connection to it as an institution. In 2013, on behalf of my business entity, Legacy Global Group, LLC ("Legacy"), I entered into a licensing agreement with my father's business entity, New York Preparatory School, Inc., d/b/a The Dwight School ("Dwight School"). The purpose of this licensing agreement was to allow me to develop the Dwight School brand outside of New York, such as by starting new schools using the Dwight School name in other states and online. A true and correct copy of the 2013 Intellectual Property License and Purchase Option Agreement between Legacy and Dwight School (the "Licensing Agreement") is attached hereto as **Exhibit A**. As consideration for the Agreement, I paid my father, Stephen Spahn, a total of $1,000,000.

7. Several years later, in and around September 2017, my father approached me and informed me that he wished to expand the Dwight School brand outside of New York City and online. Due to the Licensing Agreement, my father was unable to fulfill his wish to develop other Dwight Schools outside of New York City. Out of my love for my father, and the understanding that I would remain involved in the management of any future Dwight School ventures, I agreed

that my father could retain the Dwight School brand and various trademarks for his intended ventures. I told my father that I would not enforce the Licensing Agreement against him.

8. As gratitude for my decision not to enforce the Licensing Agreement, my father agreed to return the $1,000,000 I had paid him back in 2013. My father told me that the money should be considered a gift that would not have to be repaid. My father described it to me as gifting me back my own money. He expressed his hope that I would invest it future ventures, as I had originally intended when I entered into the Licensing Agreement.

9. Consistent with his practice, my father told me that, in order to avoid potential gift tax consequences, I should sign a "promissory note" that would be prepared by our attorney Michael Kalnick. My father told me to call Mr. Kalnick if I had any questions, and that the proposed Note would be delivered to me. He reiterated to me that the Note was not valid and that he would not enforce it against me, his own son.

10. My father Stephen Spahn thus characterized the proceeds of the Note as a gift and the Note itself as simply a measure to avoid potential taxes. At no point in time did my father ever describe the return of my $1,000,000 payment as a loan that had to be repaid. He informed me that the Note would not be enforced but would be filed away in the event of a future audit.

11. A true and correct copy of my father's September 13, 2017 email to me is attached hereto as **Exhibit B**. In it, he confirms our discussion about taxes and that he would be sending me the Note via FedEx. Notably, my father does not describe his payment to be as a loan that would need to be repaid.

12. I received the proposed Note via FedEx, as my father had informed me. After receiving the Note, I called my attorney Michael Kalnick, as instructed by my father. Mr. Kalnick informed me that the Note was meant to protect my family from potential tax consequences

3

resulting from my father's $1,000,000 gift to me. Mr. Kalnick further informed me that there was nothing to worry about, as my father was not going to enforce the Note. He advised me that the Note was just "for show" in the event of an audit, and that I should sign it. Based on the advice of my attorney, Mr. Kalnick, I signed the Note and returned it to my father.

13.     As stated above, it was the custom and practice in my family to sign sham "promissory notes" to avoid potential taxes when large monetary gifts were exchanged between family members. In 2019, a similar situation occurred, and my father sent me an email instructing me to "sign and return the attached Promissory Note to Michael Kalnick to avoid possible tax consequences." A true and correct copy of my father's September 2, 2019 email to me, copying my mother and Michael Kalnick, is attached hereto as **Exhibit C**.

14.     Michael Kalnick was my attorney and legal advisor in every aspect of my life. For example, in 2015, he represented me in the negotiations surrounding the sale of my apartment in New York City. A true and correct copy of Mr. Kalnick's September 21, 2015 email, referring to me as his client, is attached hereto as **Exhibit D**.

15.     Mr. Kalnick represented me in family law matters as well, and drafted a prenuptial agreement for me in 2015. A true and correct copy of Mr. Kalnick's August 24, 2015 email to me, attaching his proposed prenuptial agreement, is attached hereto as **Exhibit E**.

16.     Mr. Kalnick also represented me in business matters, such as forming new business entities at my request. A true and correct copy of Mr. Kalnick's February 1, 2018 invoice to me for legal services rendered is attached hereto as **Exhibit F**.

17.     I would turn to Mr. Kalnick for counsel and advice whenever I was uncertain about how to proceed in any personal or professional matter. A true and correct copy of Mr. Kalnick's September 15, 2020 email to me is attached hereto as **Exhibit G**.

18. In recent years, a dispute has developed between my father, my brother Blake Spahn, and myself regarding my future involvement with the Dwight School and its related entities. This has unfortunately strained my relationship with my father. Moreover, once this dispute developed, Michael Kalnick suddenly ceased acting as my attorney, while continuing to act as counsel for my father.

19. Despite acting as my attorney for years, and providing me with legal counsel which I relied on in making decisions, Mr. Kalnick has recently taken the position that he never acted as my lawyer. Incredibly, he now claims to have represented my father Stephen Spahn and not me. A true and correct copy of Mr. Kalnick's March 18, 2024 letter to my litigation counsel Bryan Freedman is attached hereto as **Exhibit H**.

20. Until my father purportedly sent a demand letter on April 8, 2024 to an address I did not reside at, he never demanded payment on the Note. At no point in time prior to that April 8, 2024 letter did my father ever inform me that he would be enforcing the Note against me. I understand that my father initiated this action on April 12, 2024, the same week he first demanded payment on the Note. My father's sudden, inexplicable change in position only occurred after the dispute had developed among my family members over my future involvement with the Dwight School.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: July 11, 2024

Kirk Spahn